IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jeffrey D. Huggins,<br><br>            Plaintiff,<br><br>  vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>            Defendant. | Civil Action No. 6:05-0983-RBH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").

## ADMINISTRATIVE PROCEEDINGS

On July 17, 2002, the plaintiff filed an application for DIB alleging disability beginning July 26, 2001. The application was denied initially and on reconsideration. On May 2, 2003, the plaintiff requested a hearing, which was held on March 10, 2004. Following the hearing, at which the plaintiff and his attorney appeared, the administrative

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

law judge considered the case *de novo*, and on December 21, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on February 16, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)     The claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 2 16(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)     The claimant has not engaged in substantial gainful activity since July 26, 2001.
>
> (3)     The medical evidence establishes that the claimant has insulin dependent diabetes mellitus, peripheral neuropathy, and plantar nodules. However, he does not have an impairment, or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (4)     The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (5)     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).
>
> (6)     The claimant retains the residual functional capacity to perform the full range of sedentary work.
>
> (7)     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> (8)     The claimant is a "younger individual between the ages of 18-44" (20 CFR §§ 404.1563 and 416.963).
>
> (9)     The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).
>
> (10)   Based on a finding the claimant can perform the full range of sedentary work, and using Medical-Vocational Rules 201.27 and 201.28 as a framework for decision making.

> (11)   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually

3

performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 38 years old as of the alleged onset date of disability, July 26, 2001, and 42 years old as of the date of the ALJ's decision, December 21, 2004. He has a high school education (Tr. 49), and has worked in the vocationally relevant past as a picture framer and construction laborer (Tr. 44).

The plaintiff has a history of Type II diabetes of unknown duration, hypertension diagnosed in 2001, and ganglion cysts on his feet of unknown duration (Tr. 90). He received his primary medical treatment at the Kershaw County Community Medical Center ("KCCMC") (Tr. 95-120, 142-48).

KCCMC records dated between July 2002 and March 2004 indicated that the plaintiff received regular follow-up care related to diabetes and hypertension (Tr. 95-120, 142-48, 162). He complained of numbness, coldness, and occasional tingling in his hands and feet, headaches, dizziness when standing, and blurred vision (Tr. 95-120, 142-48). Neurontin was somewhat helpful in alleviating his symptoms (Tr. 97). The plaintiff was also treated for ongoing sinusitis, and it was noted that he had frequent gum abscesses and loose teeth (Tr. 147-48, 162). Treatment records indicated that he needed surgery to remove the ganglion cysts on his feet, but that he could not afford the procedure (Tr. 97). The plaintiff's blood pressure ranged from a low of 110/72 (Tr. 100) to a high of 156/91 (Tr. 112), and was frequently in the normal range (Tr. 97, 98, 100, 114, 146). His grip strength remained full at 5/5, and Tinel's and Phalen's signs were negative for carpal tunnel indicators (Tr. 114). His extremity motor strength was full at 5/5, and his deep tendon reflexes were normal at 2+ (Tr. 162). His extremity pulses remained normal at 2+ (Tr. 114, 120, 162). Cervical spine x-rays taken on July 15, 2002, showed minimal spurring, but were

otherwise unremarkable (Tr. 113). A CT scan of the plaintiff's head taken on August 8, 2002, was normal (Tr. 108). He continually exhibited normal behavior (Tr. 97-101, 144-48). Diagnoses included non-insulin dependent diabetes mellitus, peripheral neuropathy, anemia, ganglion cysts, and hypertension (Tr. 97-120). His physicians prescribed oral medications for his diabetes, hypertension, anemia, neuropathy, and sinus problems (Tr. 95-120, 144-48, 162).

On October 2, 2002, the plaintiff presented to ophthalmologist Dr. John C. Hindersman for an evaluation. Dr. Hindersman found the plaintiff had 20/20 vision bilaterally for both distance and reading, when corrected. He assessed mild background diabetic retinopathy and myopia. Dr. Hindersman noted the plaintiff's prognosis was good, and that glasses were recommended. He indicated that the plaintiff did not need to avoid any activities or working conditions after correction (Tr. 88-89).

On October 8, 2002, the plaintiff presented to Dr. Jonathan H. Hegler for a consultation in connection with his application for benefits (Tr. 90-93). He reported having pain over his frontal sinuses, as well as intermittent numbness of his left hand, right arm, and left foot. He denied any weakness in his hands. He also indicated that his foot cysts were very tender and limited his ability to stand for even short periods. He reported headaches "off and on," and dizzy spells when standing. He denied having any depression or anxiety symptoms. Dr. Hegler noted that the plaintiff was very talkative and seemed "quite understanding" of his diabetic problems. On examination, the plaintiff was fully oriented and had normal motor movements in all motor groups without deficits. No obvious sensory disturbances were noted, although the plaintiff exhibited a "mild" decrease in sensation in the base of his feet and in his fingertips. His gait was cautious and painful. The plaintiff had full 5/5 grip strength. Bilateral ganglion cysts on both feet were tender and beginning to cause some contraction of the flexor hallucis tendon, but there were no signs of infection and no other foot abnormalities were noted. Dr. Hegler noted a possible mild

cataract on the left eye. He assessed diabetes with a mild left cataract and good vision, early peripheral neuropathy, and no other diabetic complications; hypertension – well controlled on medication; numbness in the extremities likely secondary to early peripheral neuropathy; ganglion cysts on both feet which would limit the plaintiff's ability to stand and walk for even short periods of time; headache and dizzy spells with normal EKG, CT, blood pressure, and pulse; and vision which required corrective lenses (Tr. 90-93).

On November 25, 2002, State Agency physician Dr. Robert D. Kukla reviewed the plaintiff's records and assessed his physical residual functional capacity. Dr. Kukla found the plaintiff could perform the exertional requirements of light work, that is, lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. He further determined that the plaintiff could do no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 132-40).

On April 16, 2003, State Agency physician Dr. Charles C. Jones reviewed the plaintiff's records and assessed his physical residual functional capacity. Dr. Jones concurred with Dr. Kukla's November 2002 assessment (Tr. 123-30).

On August 30, 2004, the plaintiff presented to ophthalmologist Dr. H.L. Milne, III, for an evaluation. Dr. Milne found the plaintiff's best corrected vision for distance and reading was 20/25 bilaterally. He assessed stable background diabetic retinopathy, and did not recommend any treatment other than glasses and annual follow-up. Dr. Milne indicated that the plaintiff did not need to avoid any activities or working conditions after correction (Tr. 163-65).

At the March 10, 2004, administrative hearing, the plaintiff testified that he lived alone and was briefly in the Air Force until he was discharged for inadaptability to military life (Tr. 185). He most recently worked as a picture framer, and stopped working in July 2001 due to "severe headaches," and the fact that he had to stand all day on the job,

which produced pain around his foot cysts (Tr. 190). He stated that when he removed his glasses, the room became dim and blurry (Tr. 197). The plaintiff testified that he took insulin for his diabetes twice per day (Tr. 202). He said his hands and feet felt cold and numb every day, and he takes Neurontin for the numbness (Tr. 207). He said he had severe headaches every day, especially when he bent over (Tr. 208). In addition to the insulin and hypertension medication (Accupril), he said he took Flonase for his sinus problem, and Tylenol for pain (Tr. 209). During a typical day, the plaintiff reported that he took his insulin, prepared breakfast, and then rested to get over the effect of the insulin (Tr. 211-12). He indicated that he spent the rest of his day "basically sit[ting] there," and that his medications made him very relaxed (Tr. 212). He testified that he read a lot with his glasses, cleaned his house, and laundered his clothes at a laundromat (Tr. 213, 220-21). The plaintiff said he could walk six to seven blocks at a time, and that he did not have any problems sitting (Tr. 217). He said he could lift 30 to 40 pounds on occasion, and that he could probably lift a 10-pound bag of potatoes more frequently (Tr. 219). He reported that stooping produced dizziness and headaches (Tr. 219). The plaintiff further reported that he often must get up in the middle of the night and cannot go back to sleep because his feet are hurting so bad. He has to sit up and rub his feet because three of his toes on the left foot curl up under his foot as if he is having a stroke (Tr. 210).

During the plaintiff's initial interview with an Agency claims representative on July 17, 2002, the claims representative noted that the plaintiff did not exhibit any difficulty with reading, understanding, coherency, concentrating, talking, answering, sitting, or using his hands (Tr. 56).

A "Report of Contact" form completed by an Agency employee on August 2, 2002, indicated that the plaintiff reported blurred vision, headaches, and weakness, but that he did not take any medications other than over-the-counter eye drops, and that he did not

currently wear glasses (Tr. 66). The plaintiff stated he could see well enough to read, watch television, cook, count money, and see numbers on the telephone (Tr. 66).

An undated "Statement of Claimant or Other Person," completed by an Agency employee for purposes of determining when the plaintiff last performed substantial gainful activity, indicated that the plaintiff was "laid off" from his last job on July 26, 2001, and that he was told he was "let go because of lack of work" (Tr. 52).

A "Development Summary Worksheet" completed by an Agency employee on January 16, 2003, indicated that the employee spoke with the plaintiff, who said his vision was still blurry, but that he could see clearly with glasses (Tr. 149, 151).

In his "Request for Hearing" dated April 29, 2003, the plaintiff stated that he took 14 pills per day and he could not stay awake or concentrate (Tr. 31).

## **ANALYSIS**

The plaintiff alleges disability commencing July 26, 2001 (Tr. 33, 166) due to cysts on his feet, numbness in his right arm and left foot, dizziness, headaches, and blurred vision (Tr. 43). The ALJ found that the plaintiff could perform sedentary work (Tr. 14). Applying the Medical-Vocational Guidelines ("the Grids"), the ALJ determined that the plaintiff could perform other sedentary jobs that existed in significant numbers in the regional economy (Tr. 15-16). The plaintiff alleges that the ALJ erred by (1) failing to order a psychological evaluation based upon his "inherent mental problems"; and (2) failing to properly evaluate his use of medications and alleged side effects.

The plaintiff argues that the ALJ should have ordered a psychological evaluation. The plaintiff claims that the ALJ failed to recognize from his testimony that he had "inherent mental problems . . . [and was] a neurotic with such neuroses as to make him certainly questionable as to his ability to work." The plaintiff further claims that he did not

9

have the money to be examined for his alleged mental problems (pl. brief 7). The plaintiff states as follows in his brief:

> It is the contention of the [p]laintiff that it is a combination of ailments with psychiatric overlays evident by his actions and his willingness to render himself a slave to various medications and ailments [that] prevent[s] him from doing any sort of gainful work in the current economy. It was inherent on the part of the ALJ to order the claimant for full psychiatric evaluation to determine how much of his pain is physical and how much is mental.

(Pl. brief 7). This court agrees that the evidence with regard to the plaintiff's mental condition is inadequate. "This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981)). Accordingly, upon remand, the plaintiff should be referred for a mental examination and assessment of his mental residual functional capacity to assist the ALJ in his consideration of the plaintiff's alleged mental impairment.

The plaintiff next argues that the ALJ failed to properly evaluate his use of medications and alleged side effects, which include sleepiness and inability to concentrate. As noted above, the plaintiff states that he takes some 14 pills per day, and he alleges that his medicine makes him sleepy and affects his ability to concentrate. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7 states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the

evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p. The ALJ made a credibility determination in his decision (Tr. 13-14); however, he did not consider the plaintiff's complaints regarding the side effects of his medication. Upon remand, the ALJ should consider the plaintiff's medication use and his subjective complaints of fatigue in his analysis.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

March 1, 2006

Greenville, South Carolina